McCANDLESS, administrator, *et al. v.* CONLEY *et al.*

1. Where an amendment to pleadings has been, in term, duly allowed, it is not, after the term has expired, within the power of the court to revoke the order of allowance and strike the amendment on the ground that it was in the first instance erroneously allowed.
2. The sufficiency of a petition can not properly be tested by a motion to nonsuit; and the more especially is this so after a demurrer to the petition has been made and overruled.

Argued February 14,—Decided April 1, 1902.

Equitable petition. Before Judge Lumpkin. Fulton superior court. April 8, 1901.

*Arnold & Arnold, L. Z. Rosser,* and *Burton Smith,* for plaintiffs. *Westmoreland Brothers,* for defendants.

LUMPKIN, P. J. On March 17, 1899, Edward S. McCandless, as administrator de bonis non of the estate of Jonathan Broad, and Alfred E. Buck instituted in the superior court of Fulton county an

equitable action against James Banks, as administrator of the estate of John L. Conley, Morris J. Conley, Eliza T. Conley, Benjamin Conley, Sarah H. Conley, and the Plowboy Company, a corporation. The following is a condensed statement of the allegations of the plaintiffs' petition now material to be considered : The deceased John L. Conley, as the former administrator of Broad's estate, was indebted to the plaintiff McCandless, as the administrator de bonis non of that estate, a large amount for which the said John L. in his representative capacity had never accounted. The claim thus arising had long been in litigation between these two before John L. Conley died, and had never yet been reduced to judgment. The plaintiff Buck, as assignee, held against John L. Conley a judgment rendered in 1887, upon which a balance remained due and unpaid. In pursuance of a conspiracy to which John L. Conley and all the other individuals named as defendants were parties, he had at various times made conveyances of realty for the purpose of hindering, delaying, and defrauding his creditors. Some of these conveyances were made to Morris J. Conley and some to the other defendants. The prayers of the petition were, that McCandless have a judgment for the amount of his claim; that all of the above-mentioned conveyances be decreed null and void as to the plaintiffs, and that the property therein described be subjected to the satisfaction of their demands. Morris J. Conley filed a separate, and the other defendants a joint, demurrer to the plaintiffs' petition. These demurrers contained the general ground that no cause of action was set forth, and the special ground that the transactions attacked by the petition had taken place more than seven years prior to the bringing of the action, and that the plaintiffs had knowledge of these transactions more than seven years before filing their petition. The demurrers were overruled January 2, 1900; and to this, so far as appears, none of the defendants excepted. Morris J. Conley answered, denying the material allegations of the petition, but not setting up that the plaintiffs were for any reason barred by the lapse of time. The other defendants filed a joint answer in which, besides denying the main averments of the petition, they also alleged that the plaintiffs were barred by the lapse of time, basing this defense on the same ground as that specially stated in their demurrer. On January 3, 1900, the plaintiffs filed an amendment to their petition, which was duly allowed. It was therein alleged that the

original suit of McCandless against John L. Conley, as administrator of the Broad estate, was begun in 1884, and that since the filing of the present petition, a judgment in that suit had been rendered in favor of McCandless, as administrator de bonis non, for stated amounts of principal and interest. It was also in this amendment, for various reasons which were set forth in detail, alleged that the plaintiffs were not in laches and that their cause of action was not barred. It does not appear that any of the defendants demurred to this amendment or met the same by further answer. When the case came on to be heard, which was upon April 5, 1901, counsel for the defendants did move to strike the amendment just mentioned. The court refused to grant the motion, but, as will be presently seen, subsequently took a different course with respect thereto. After the testimony had been closed, " a motion was made to dismiss the plaintiffs' case, in the nature of a motion for a nonsuit, as to all of the defendants." This motion was on that day sustained as to the Plowboy Company and all of the Conleys except Morris J. To this the plaintiffs did not except. On April 8, 1901, the court passed an order revoking the allowance of the plaintiffs' amendment of January 3, 1900, and "sustained the motion for a nonsuit as to the remaining defendants; . . gave judgment of nonsuit in the entire case, and dismissed the plaintiffs' case." They excepted to the order revoking the allowance of their amendment, and to "the judgment nonsuiting the case as to the defendant James Banks, administrator of John L. Conley, and as to the defendant Morris J. Conley."

1. The first question is: Did the court err in striking the plaintiffs' amendment? It should be answered in the affirmative. The amendment was duly allowed and filed January 3, 1900. The fall term, 1899, of the court had not then expired. The motion to strike was made during the spring term, 1901. The amendment therefore remained as a part of the record of the case during a portion of the fall term, 1899, until after the lapse of both the spring and fall terms for the year 1900, and also during a part of the spring term, 1901. In our opinion, the court had no further control over this amendment after the termination of the term at which it was allowed. " The authorities all hold that a court has plenary control of its judgments, orders, and decrees during the term at which they are rendered, and may amend, correct, modify, or supplement

them, for cause appearing, or may, to promote justice, revise, supersede, revoke, or vacate them, as may in its discretion seem necessary." 1 Black, Judg. § 153. But after "the expiration of the term at which a judgment or decree was rendered, it is out of the power of the court to amend it in any matter of *substance* or in any matter affecting the *merits*." Ibid. § 154. Therefore, as " a general rule, it is unquestionably true that no act of the court, as contradistinguished from the act of its officers or of the parties, can be allowed to be amended but during the term at which it was done. During the term the record is said to be in the breast of the judge; after it is over it is upon the roll." Ibid. § 157. So " when the defect consists in the failure of the court to render the proper judgment, or arises from a want of judicial action, the record can not be corrected after the term has closed, the cause being no longer *sub judice.* . . The power to amend *nunc pro tunc* is not revisory in its nature, and is not intended to correct *judicial* errors;" and this being so, "However erroneous, the express judgment of the court can not be corrected at a subsequent term." Ibid. § 158. See also, in this connection, *Watkins* v. *Brizendine,* 111 *Ga.* 458, and *Dyson* v. *Southern Railway Co.,* 113 *Ga.* 327. The mere fact that a cause is still pending, no final judgment on the merits having been rendered, does not preserve in the court power to revoke interlocutory rulings made at a term which has passed. Cralle *v.* Cralle, 84 Va. 198. Certain it is that the defendants in the court below had no right to complain of the allowance of the plaintiffs' amendment after the expiration of the term at which the court acted thereon. *McCaulla* v. *Murphy*, 86 *Ga.* 475. And accordingly, the trial judge erred in not treating the matter as res adjudicata. It was in the brief of counsel for the defendants in error suggested that this amendment was allowed ex parte and without knowledge on their part until that term had passed. No such fact as this appears in the record before us; but even were this otherwise, it would avail them nothing. It must be remembered that the amendment was allowed during a regular term of the court; and if anything is settled, it is that counsel must keep themselves informed as to everything done in their cases while the court is in session. Any other rule would lead to inextricable confusion and difficulty. We therefore hold that the amendment of January 3, 1900, should not have been stricken, and that the same should have

been treated as constituting a part of the plaintiffs' pleadings in this case.

2. The judgment of nonsuit as to Banks, administrator, and Morris J. Conley was erroneous. The former made no defense, either by demurrer or answer. Morris J. Conley, as will have been seen, challenged the sufficiency of the plaintiffs' original petition by a demurrer, which was overruled. In that demurrer the point was distinctly made that the plaintiffs had been in laches and were barred by the lapse of time. The overruling of the demurrer necessarily adjudicated to the contrary, and Morris J. Conley did not except. It was therefore definitely and finally settled as to him that the petition was good, and that, if sustained by proof, the plaintiffs were entitled to the relief they sought against him. We have already undertaken to show that the plaintiffs' amendment should not, during the trial, have been stricken. Upon this amendment Morris J. Conley, save as to the motion to strike which has been disposed of, made no attack whatever. He did not demur to it nor did he undertake to answer it. As will have been seen, the plaintiffs in this amendment distinctly alleged that they had not been guilty of any laches, and that, for reasons assigned, they were not barred by the lapse of time from instituting the present proceeding. Surely, then, nothing remained for them to do but to prove their case as laid. Our only question on this branch of the case therefore is: Did the plaintiffs introduce sufficient evidence to authorize a jury to find that their allegations of fact were true? We have examined the evidence and have reached the conclusion that it was such as to require a submission of the case to the jury. In an opinion filed by his honor below it appears that he sustained the motion to nonsuit on the ground that the plaintiffs were too late in bringing their action. It is needless now to decide whether, as an abstract proposition, this position was or was not tenable. At the time of rendering the judgment of nonsuit, the court below had no further control of this question. It had already been finally and conclusively settled against the defendants by an adverse ruling to them upon their demurrers. Furthermore, this question was not presented for determination by the motion to nonsuit. See *Flewellen* v. *Flewellen*, 114 *Ga.* 403, and cases cited. As the writer took occasion to point out in the case of *Reeves* v. *Jackson*, 113 *Ga.* 184: "The office of such a motion is not to test the legal sufficiency

of a petition, but the sufficiency of evidence introduced to sustain the allegations thereof."

Judgment reversed. All the Justices concurring, except Little and Lewis, JJ., absent.